MILDRED SPEELMAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Speelman v. Commissioner
Docket No. 657-79.
United States Tax Court
T.C. Memo 1981-115; 1981 Tax Ct. Memo LEXIS 630; 41 T.C.M. (CCH) 1085; T.C.M. (RIA) 81115; March 11, 1981. *630 Petitioner and her son operated the family farm as a partnership. Held, petitioner failed to prove that there was an implicit agreement allocating the full amount of the partnership's income to her son. Held further, petitioner was entitled to a distributive share of one-half of the partnership's income for 1973 and 1974. John Barrington, for the petitioner. Barbara McCaskill, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined deficiencies in petitioner's Federal income taxes for 1973 and 1974 of $ 2,737.77 and $ 3,747.81, respectively. The sole issue for decision is the amount, if any, of the income from a family farming partnership which petitioner must include in her gross income for 1973 and 1974. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner Mildred Speelman resided in Wooster, Ohio, when she filed her petition in this case. Petitioner did not file Federal income tax returns for 1973 and 1974. Prior to 1952, petitioner and her husband Daniel Speelman, owned a farm in Holmes County, Ohio. Petitioner had inherited one-half of the farm and together with her husband had purchased *631 the remaining half. Petitioner and Daniel resided on the farm with their four children, the oldest of whom was David Speelman. When David was 14 years old, Daniel deserted the family for several years. Thereafter, David assumed control of the family farming operation. He left school and worked full-time on the farm, even after Daniel returned. After returning, Daniel never participated in the family's farming activities. In 1952, petitioner and Daniel sold the Holmes County farm and purchased a farm in Wayne Township, Wayne County, Ohio. At that time, all of petitioner's children worked on the farm, and David, who was only 20 years old, continued to supervise the farming operation. From 1952 until December 1974, petitioner conducted the family farming operations in partnership with her son, David. While petitioner's other children eventually moved away from the farm, David together with his wife and children lived in the farmhouse on the Wayne Township farm until the termination of the partnership in 1974. During most of this period, petitioner also lived in the farmhouse. During the course of the partnership, David worked on the farm, supervised its operation, and managed the *632 partnership's funds. Although petitioner and David's wife also worked on the farm performing miscellaneous tasks, David was primarily responsible for the farming operation. The partnership was operated in an extremely informal manner. Petitioner and David never entered into an express oral or written agreement regarding the operation of the partnership. In addition, the records that they maintained were inadequate. Neither petitioner nor David even had a checking account prior to the final six years of the partnership. Furthermore, the division of the income from their farming activities as reported on their respective Federal income tax returns during the years of the partnership's existence was inconsistent. For the years 1956 through 1960, all the income from the farming operation was reported on joint income tax returns filed by petitioner and her husband. However, for the years 1961 through 1963 and 1966 through 1968, petitioner and David each reported one-half of the farm income on their returns, while for their 1965 taxable year, petitioner reported one-third of the farm income and David reported the remaining two-third's of the farm income. [1] Finally, from 1969 through *633 1974, David reported the full amount of any income or loss from the farming partnership on his returns. From 1954 until the time of the trial in the instant case, all the returns filed by petitioner and David were prepared by Paulyne Briggs, a public accountant. During the existence of the partnership, income from the farming operation was used to pay the original mortgage on the Wayne Township farm, make needed improvements, purchase livestock, acquire additional equipment, and purchase two additional tracts of farmland. In addition, farm income was used to pay many of petitioner's living expenses and all the living expenses of David and his family. After paying all the expenses of the farming operation, including living expenses, little, if any, money remained. During 1973 and 1974, bad health had forced petitioner to forego working on the farm, and she was employed off the farm, paying some portion of her living expenses with the income earned therefrom. Petitioner, however, continued to live in the farmhouse with David and his family. In December 1974, the partnership was terminated, *634 and the livestock and equipment of the farming operation were sold at public auction. Petitioner and David disagreed regarding the payment of debts and the division of the proceeds and contested these issues in the courts of the State of Ohio. During the course of this litigation, the Court of Common Pleas, Wayne County, Ohio, and the State of Ohio Court of Appeals determined that petitioner and David had operated the farm as a partnership and that they were each entitled to an equal share of the value of all the property acquired with partnership funds. Since the Ohio Courts decided that the Wayne Township farm was not partnership property, but petitioner's separate property, David was awarded an amount equal to one-half of the value of all improvements made to the farm with partnership funds. In the notice of deficiency, respondent determined that petitioner had gross income from the farming partnership of $ 13,631.87 and $ 13,186.34 for 1973 and 1974, respectively. OPINION We must determine the amount, if any, of the partnership's income which is includable in petitioner's gross income for 1973 and 1974. Petitioner maintains that commencing in 1969 there was an implicit agreement *635 which allocated all of the income or loss of the partnership to David. According to petitioner, she ceased active participation in the farming operation in 1969, and thereafter, there was no division of farm income, either actually or for tax purposes, with David reporting the full amount of any farm income or loss on his tax returns for 1969 through 1974. Although petitioner does not contend that there was any express oral or written agreement with respect to her share of the partnership's income for the years in issue, she insists that this conduct demonstrates that she and David had implicitly agreed that she was no longer entitled to a share of the partnership income. Respondent, however, argues that petitioner was entitled to one-half of the farm income for 1973 and 1974. [2] We agree. In determining his personal income tax, a partner must take into account his distributive share of the partnership's taxable income whether actually *636 received by him or not. Sec. 702(a); [3]DeCousser v. Commissioner,16 T.C. 65, 71 (1951); Beck Chemical Equipment Corporation v. Commissioner,27 T.C. 840, 856 (1957). Section 704(a) provides the general rule that a partner's distributive share of income, gain, loss, deduction, or credit is determined by the partnership agreement. With respect to any matter on which the partnership agreement is silent, however, the provisions of local law are considered to constitute part of the agreement. Sec. 1.761-1(c), Income Tax Regs.
It is clear that there was no explicit agreement with respect to the division of the partnership's income. Although the testimony adduced at trial suggests that petitioner and David had some sort of vague understanding that they were equal partners, the evidence is inconclusive. Furthermore, petitioner has failed to convince us that there was any implicit agreement with respect to the division of the partnership's income. The record simply fails to support petitioner's contentions. While petitioner did not work on *637 the farm in 1973 or 1974, the record fails to establish that her active participation in the farming operation ended in 1969. We are also unable to accord any significance to the fact that from 1969 through 1974 David reported the full amount of the partnership's income or loss on his tax returns. During the partnership's existence, there had been other unexplained variations in the division of income reported by petitioner and David on their respective tax returns. In addition, the testimony elicited from David and the accountant who prepared their returns indicates that this change was undertaken to minimize petitioner's tax liability. Moreover, petitioner's assertion that there was no actual division of the partnership's income after 1969 cannot be considered significant because there is no evidence that there ever had been an actual division of that income. To the contrary, the record suggests that there was never an accounting of the partnership's income, the partnership functioning as an informal family operation, with petitioner receiving her share of the partnership's income indirectly, through the payment of some portion of her living expenses or the purchase of additional *638 partnership property. Although petitioner did not actively participate in the farming operation during 1973 and 1974, the Wayne Township farm and her share of the property that had been acquired with partnership funds continued to be used in the operation. While petitioner and David's wife performed various tasks on the farm, David was primarily responsible for the farming operation, and his testimony suggests that petitioner's departure as an active participant in the operation was of little consequence. [4]
Upon considering the evidence available to us, we must conclude that, at least in the final years of the partnership's existence, petitioner was a capital partner, [5] and therefore, her active participation in the farming operation cannot be deemed a prerequisite to her receiving a share of the partnership's income. Compare Smith v. Commissioner,331 F. 2d 298 (7th Cir. 1964), affg. a Memorandum Opinion of this *639 Court. [6] Accordingly, we reject petitioner's contention that there was an implicit agreement with respect to the division of the partnership's income for the years in issue. Since the evidence indicates that there was no agreement with respect to the division of the partnership's income, we must turn to local law to resolve this matter. [7] Pursuant to section 1775.17 of the Ohio Uniform Partnership Law, Ohio Rev. Code Ann., unless otherwise agreed, partners "share equally in the profits" of the partnership. Accordingly, we hold that petitioner was entitled to a distributive share of one-half of the partnership's income for 1973 and 1974, and therefore, that amount is includable in her gross income.
To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. No returns were submitted into evidence with respect to the years 1952 through 1955 and 1964.↩
2. In the notice of deficiency, respondent's calculation of the deficiencies for 1973 and 1974 included 100 percent of the farm income in petitioner's gross income. On brief, however, respondent states that "this was done only to protect the revenue."↩
3. Unless otherwise provided, statutory references are to the Internal Revenue Code of 1954, as amended and in effect for the years involved herein.↩
4. Petitioner has not argued that the partnership terminated upon her departure as an active participant, nor would the record support such a contention. Moreover, the record indicates that petitioner has conceded that the partnership did not terminate until December 1974.↩
5. See sec. 704(e)(1). See also sec. 1.704-1(e)(1)(iv), Income Tax Regs.↩
6. See also Harrell V. Commissioner,T.C. Memo. 1978-211↩.
7. See Liebesman v. Commissioner,T.C. Memo. 1966-88↩.